|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF NEVADA | |

| | |
|---|---|
| John Lige, | 2:16-cv-00603-JAD-PAL |
|     Plaintiff | **Order Granting in Part Motion for Summary Judgment** |
| v. | [ECF Nos. 100, 111] |
| Clark County, | |
|     Defendant | |

John Lige has been working for Clark County's news-racks-enforcement department for more than a decade. He sues his employer for racial and gender discrimination, retaliation, and violating his civil right to make and enforce contracts.[1] Clark County moves for summary judgment on all claims except the civil-rights one,[2] and after considering both parties' arguments, I grant the motion in part. This case proceeds to trial only on the discrimination and civil-rights claims.

## Discussion

In his second-amended complaint, Lige alleges 18 claims, some against Clark County and others against the Service Employees International Union, Local 1107 (SEIU). The claims against the SEIU were dismissed with prejudice.[3] Four of the remaining claims are identically mirrored by another four—one side grounded in federal law and the other in Nevada's state-law analogs[4]—and the final claim is Lige's civil-rights one.[5] As I discuss in each corresponding

---

[1] ECF No. 79.

[2] ECF No. 100.

[3] ECF No. 79.

[4] *See generally* ECF No. 26.

[5] ECF No. 26 at 22.

section,[6] Lige's state-law discrimination and retaliation claims are evaluated under analogous federal-law standards. So, I divide this discussion into five distinct claims: (1) racial discrimination; (2) sex discrimination; (3) hostile-work-environment retaliation; (4) failure-to-promote retaliation; and (5) civil-rights violations.

**A.    Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show [that] there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[7] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[8] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[9]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[10] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a

---

[6] Neither the complaint, nor the briefing—from either party—on this summary-judgment motion are models of organization or clarity, and the parties consistently fail to address portions of each other's arguments.

[7] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[8] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[9] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[11]

**B.     Motion to supplement opposition brief**

Lige moves for leave to supplement his opposition to Clark County's summary-judgment motion.[12] Counsel represents that despite efforts to contact Lige's former supervisor Gary Loberg for a declaration before the response deadline, Loberg did not respond until days after the deadline had already passed.[13] Lige asked Clark County to stipulate to allow him to supplement his opposition, but the County declined. Lige also argues that Clark County will not be prejudiced because he disclosed Loberg as a witness in his initial disclosure, Clark County chose not to depose Loberg, and the County has the declaration in its possession already.[14] Clark County does not oppose Lige's motion. I construe that lack of opposition as the County's consent to grant it,[15] grant the motion, and consider Loberg's declaration in deciding this motion.[16]

**C.     Discrimination**

Lige brings his race- and sex-discrimination claims under Title VII and NRS 613.330.[17]

---

[11] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[12] ECF No. 111.

[13] *Id.* at 2.

[14] *Id.*

[15] *See* L.R. 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion.").

[16] My consideration of Loberg's declaration does not change the outcome of this summary-judgment matter. It merely bolsters my decision—along with Lige's already-proffered evidence—to grant it in part and deny it in part.

[17] ECF No. 26 at 14–18.

Section 613.330 of the Nevada Revised Statutes is a state-law analog to federal Title VII.[18] And whether the claim is brought under Title VII or NRS 613.330, the analysis is the same.[19] In the pathmaking case of *McDonnell Douglas Corporation v. Green*,[20] the United States Supreme Court established a burden-shifting framework for courts to apply to Title VII-discrimination claims.[21] "A discrimination complainant must first establish a prima facie case of disparate treatment."[22] "In general, a plaintiff must present evidence of 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such action was based upon race or another impermissible criterion.'"[23] If the plaintiff presents a prima facie case, "the burden shifts to the defendant to produce some evidence demonstrating a legitimate, nondiscriminatory reason for the employee's [treatment]."[24] And if the defendant meets that burden, "any presumption that the defendant discriminated 'drops from the case,' and the plaintiff must then show that the defendant's alleged reason for [the treatment] was merely a pretext for discrimination."[25] Lige alleges two types of discrimination: race and sex.

### 1. *Race discrimination*

Lige's race-discrimination claim is primarily brought under a hostile-work-environment

---

[18] *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases."); *see also Apeceche v. White Pine Cnty.*, 615 P.2d 975, 977 (Nev. 1980) (holding that "NRS 613.330(1) is almost identical to § 703(a)(1) of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-2(a)(1)").

[19] *Id.*

[20] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[21] *Id.* at 802.

[22] *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004) (internal citations and quotations omitted).

[23] *Id.* (quoting *Gay v. Waiters' Union*, 694 F.2d 531, 538 (9th Cir. 1982)).

[24] *Id.*

[25] *Id.*

4

theory. Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [his] race."[26] But "the scope of the prohibition is not limited to economic or tangible discrimination,"[27] and "it covers more than terms and conditions in the narrow contractual sense."[28] Racial harassment that is "so severe or pervasive" that it alters the conditions of employment and creates an abusive working environment violates Title VII.[29] An abusive working environment is one that "a reasonable person would find hostile or abusive"[30] and that the employee did find hostile or abusive.[31] To determine whether an environment is abusive, courts look "at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[32] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[33] And the United States Supreme Court has consistently rejected "any conclusive presumption that an employer will not

---

[26] 42 U.S.C. § 2000e-2(a)(1).

[27] *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993), and *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)) (internal quotations and citations omitted).

[28] *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)).

[29] *Faragher*, 524 U.S. at 786 (applying rule to sex-discrimination claims and citing *Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971) *cert. denied*, 406 U.S. 957 (1972), and *Firefighters Institute for Racial Equality v. St. Louis*, 549 F.2d 506 (8th Cir. 1977), *cert. denied sub nom. Banta v. United States*, 434 U.S. 819 (1977) for race-discrimination claims).

[30] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

[31] *Faragher*, 524 U.S. at 777 (citing *Harris*, 510 U.S. at 21–22).

[32] *Id.* at 777–78 (citing *Harris*, 510 U.S. at 23).

[33] *Id.* at 788 (internal quotations omitted).

5

discriminate against members of his own race."[34]

Clark County argues in a single, three-sentence conclusory paragraph that "[Lige's] First Amended Complaint is devoid of *any* factual allegations that he was subjected to any repeated or objectively severe conduct by *any* Clark County employees. Being required to perform your job duties does not qualify as hostile and severe conduct. Here, there is simply no actionable claim for hostile work environment."[35]

That Lige's complaint is devoid of hostile-work-environment facts is just not true. Lige alleges and supports with declarations and deposition testimony from himself, Rosemary Haynes, and Loberg, that his supervisor Christopher Bramley told the African-American employees that he didn't trust them,[36] got into fierce arguments with them but not with non-African-American employees,[37] and screamed at Lige in front of other employees on at least one occasion;[38] and that Loberg specifically "was concerned with Christopher Bramley's ability to supervise different kinds of people."[39] Lige also provides evidence that Scott Trierweiler—another supervisor—raised his fist towards Lige during an altercation in the parking lot,[40] and told a part-time Caucasian employee that he would try and "get rid" of another employee to make him full-time.[41] And there is evidence that Lige was disciplined for using a County vehicle for personal

---

[34] *Oncale*, 523 U.S. at 78 (citing *Castaneda v. Partida*, 430 U.S. 482, 499 (1977) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.")).

[35] ECF No. 100 at 13.

[36] ECF No. 108 at 14.

[37] *Id.*

[38] ECF No. 109-9 at 3–4.

[39] ECF No. 111-2 at 3–4.

[40] ECF No. 108 at 8.

[41] *Id.* at 6–7.

6

use, while a Caucasian employee was not disciplined for similar misconduct on another occasion.[42]

Viewing this evidence in the light most favorable to Lige, a reasonable jury could conclude that these instances are sufficiently "severe and pervasive" to create a hostile work environment of racial discrimination. So, I cannot grant summary judgment in the County's favor on these race-discrimination claims. I now turn to Lige's sex-discrimination claims.

### 2. *Sex discrimination*

Title VII also makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [his] . . . sex."[43] To present a prima facie case of sex or gender discrimination, Lige must show that his "compensation, terms, conditions, or privileges of employment" were different than those of a female co-worker's, and that sex was a motivating factor in that difference.[44] Title VII does not bar sex-discrimination claims "merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex."[45]

To support his sex-discrimination claim, Lige paints a scenario in which one female employee has been excused from the more physically challenging duties of the engineering-technician job requirements. He explains that Rosemary Haynes applied for an engineering-technician position in the news-racks department. She openly stated several times that she "was not willing to perform the same back-breaking labor" that Lige did. The position was offered to Anderson, a male applicant, and Haynes filed some sort of workplace-discrimination

---

[42] *Id.* at 13.

[43] 42 U.S.C. § 2000e-2(a)(1) (2012).

[44] 42 U.S.C. § 2000e-2(m) (2012) ("Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.").

[45] *Oncale*, 523 U.S. at 79.

7

charge—though not a gender-discrimination charge—with the Office of Diversity (OOD), and the OOD determined that Haynes should have been offered the position. When Anderson vacated that position, Haynes took his place. Haynes taking Anderson's place, Lige attests, was sex discrimination against Lige because the County hired a female that openly opposed performing physical labor, leaving Lige to do it all himself.[46] I construe from this theory that the alleged discrimination is actually that the County made Lige, a man, do physical labor but the same work was not demanded of Haynes, a woman.[47]

Clark County argues that Lige cannot present a prima facie case of sex discrimination because he "has absolutely no objective evidence to support his claims that he was a victim of . . . sex discrimination."[48] The County urges that Lige's "allegation that . . . he has to perform more

---

[46] ECF No. 108 at 15:16–25.

[47] Lige offers two other reasons, which appears to be an attempt to establish a pattern-or-practice theory. Lige argues that Haynes will testify that two Clark County employees told her that "it's no use in going up to the Office of Diversity and getting things done because if you're not Rosemary or a black [or] Asian female, they're not going to listen to you." *Id.* at 16. This statement appears to be inadmissible hearsay, and Lige has not offered a basis for its admission at trial, so I exercise my discretion to disregard it. FED. R. CIV. P. 56(c)(2); *see also Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 14009 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49 (evidence must be admissible to be considered on summary judgment).

Second, Lige offers one other incident of sex discrimination within the County, suggesting that it demonstrates that the County is engaging in a pattern of sex discrimination. ECF No. 108 at 16 (citing *United States of America v. Clark County*, case no. 2:14-cv-00493-RFB-NJK). But that other incident involved a different department and completely different facts from the instant one. "To prove a systemwide, pattern-or-practice of discrimination, [Lige] must prove, by a preponderance of the evidence, that the sexual harassment was [Clark County's] 'standard operating procedure,' rather than isolated incidents." *United States EEOC v. Scolari Warehouse Markets, Inc.*, 488 F. Supp. 2d 1117, 1129–30 (D. Nev. 2007) (citing *Int'l Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 336 (1977)); *see also Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005)). Lige makes no effort to demonstrate that his sole other incident—in a municipality that employs thousands of people and involving a different department, different employees, and wage discrimination—is anything more than an unrelated, isolated incident. So, both of these theories lack merit.

[48] ECF No. 100 at 11:11–12.

physical labor than [female employees do] is without merit" because "Rosemary Haynes, an African-American female, also physically handled news racks."[49] The County supports this statement with Bramley's deposition testimony.[50]

Lige counters that Haynes "did not go out into the field" for much of her time in the news-racks department.[51] He also states that Haynes told him that "the handful of times the County sent her to the field [were] to keep up appearances."[52] Loberg's supplemental declaration challenges Bramley's credibility[53] and bolsters Lige's own declaration that Haynes would not perform physical labor.[54] Both parties agree that Lige's various other co-workers, who are all male, did field work, so a reasonable trier of fact could conclude that Clark County allowed Haynes to maintain her position as an engineering technician without performing physical labor at least in part because she was a female. Whether Haynes did or did not perform comparable physical labor is a genuine issue of fact for a jury to decide. Clark County argues only that Haynes performed the same amount of work. It doesn't argue that it had a legitimate, nondiscriminatory reason for disparate treatment, so the burden never shifted back to Lige to show pretext. Accordingly, I decline to grant summary judgment on this sex-discrimination claim.

Lige fails to establish a genuine issue of fact relating to his two other proffered

---

[49] *Id.* 11:12–16.

[50] ECF No. 100-3 at 17 (60:4–19 of the transcript).

[51] ECF No. 108 at 4 (citing ECF No. 109-9 at 4, ¶ 13).

[52] *Id.*

[53] ECF No. 111-1 at 2:20–21 ("Mr. Bramley's work ethic was not the best, and he was prone to malingering.").

[54] *Id.* at 3:13–17 ("Ms. Haynes stated openly and repeatedly that she would get the open position but would not perform the same back-breaking labor that Mr. Lige performs. I was on the panel along with Mr. Lige that conducted the interviews for the open position. At the interview, Ms. Haynes again repeated she would not perform the same physical labor as Mr. Lige and would not go out into the field.").

justifications, and the statement from the two co-workers to Haynes and the pattern-of-sex-discrimination bases are not pled anywhere in the complaint. So, Lige may proceed with this claim only on the theory that Clark County required Lige to perform more strenuous work than a female employee in his same position.

**D.  Retaliation**

Lige claims that Clark County, in retaliation for his consistent complaints of workplace discrimination, forced Lige to work in a hostile work environment and refused to promote him.[55] Nevada and federal law both prohibit employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII or Chapter 613 of the Nevada Revised Statutes], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [those statutes]."[56] "To establish retaliation, the plaintiff must show: (1) [he] was engaged in a protected activity; (2) [he] suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action."[57]

Basically, the adverse-employment-action element of this claim encapsulates the mode of retaliation, i.e. hostile work environment, failure to promote. The plaintiff must show that his protected activity was *the* but-for cause of his employer's adverse employment action.[58] Under the *McDonnell Douglas* framework, if Lige can establish a prima facie case, Clark County must articulate a legitimate, non-retaliatory reason for the adverse action.[59] Clark County concedes

---

[55] ECF Nos. 26 at 19–21; 108 at 20–23.

[56] 42 U.S.C. § 2000e-3(a); NEV. REV. STAT. § 613.340(1).

[57] *Van Pelt v. Skolnik*, 897 F. Supp. 2d 1031, 1044 (D. Nev. 2012), *aff'd sub nom.*, *Van Pelt v. Nevada, ex rel. Nevada Dep't of Corr.*, 637 Fed. Appx. 307 (9th Cir. 2016).

[58] *Kennedy v. UMC Univ. Med. Ct.*, 2016 WL 4497062, at *5 (D. Nev. Aug. 25, 2016) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

[59] *See Schultz v. Wells Fargo Bank, NA*, 970 F. Supp. 2d 1039, 1062 (D. Or. 2013) (citing *Westendorf v. West Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 425 (9th Cir. 2013)).

that Lige engaged in protected activity,[60] so the appropriate inquiries are: (1) whether Lige has shown that he suffered an adverse employment action and (2) whether his protected activity was *the* but-for cause of that action.

### 1. *Hostile work environment*

The first question is whether Clark County engaged in conduct that was sufficiently "severe and pervasive" to create a hostile work environment that constitutes an adverse employment action. Clark County argues that Lige suffered no adverse employment action because he received favorable performance reviews and annual salary raises, and he is still employed with the County. But, as I explained in section C(1), *supra*, Lige has alleged and supported with evidence enough facts that would allow a reasonable jury to find that his work environment was hostile.

The next issue is whether Lige's workplace-discrimination complaints were the but-for cause of that conduct. Clark County argues that Lige fails to show any causal connection between his 2015 charge of discrimination with the Nevada Equal Rights Commission and an adverse employment action. Lige responds that he has been engaging in protected activity since 2010, and he proposes 20 instances of protected activity—some of which do not qualify as Title VII-protected activity.[61] He adds that "[c]lose temporal proximity between [his] protected activities . . . and the actions Clark County took against [him] . . . provide[s] sufficient evidence of causation to overcome summary judgment."[62]

But close temporal proximity alone is not enough to meet the heightened but-for-causation standard required of retaliation claims. Lige must show that his protected activity was

---

[60] ECF No. 100 at 6–7.

[61] Title VII protects only those actions that oppose conduct made unlawful by Title VII: discriminating against employees on the basis of race, color, religion, sex, or national origin; or to retaliate against employees that oppose discrimination on one of those bases. *See* 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a). Lige's complaints about not being able to use a truck with a crane on it to lift news racks do not, as a matter of law, qualify as protected activities.

[62] ECF No. 108 at 29.

11

the one and only cause of an adverse employment action to proceed, and with this argument, he fails to do so. I therefore grant summary judgment in Clark County's favor on this hostile-work-environment-retaliation claim. This holding does not, however, preclude Lige from pursuing a hostile-work-environment theory for his racial-discrimination claim.

### 2. Failure to promote

It is undisputed that Lige was not promoted to two positions that he applied for, so there can be no legitimate argument that he did not suffer an adverse employment action.[63] But the County invalidates Lige's but-for-causation showing by providing legitimate justifications for its decisions not to promote him.[64] Lige applied for three promotions.[65] He received the first promotion and did not show up for the interview for the second promotion, and, although he met the minimum requirements for the third promotion, he was not nearly as qualified for the position as the chosen candidate.[66] Lige does not respond to these points, and his silence prevents him from establishing a genuine issue of material fact.

Accordingly, I grant summary judgment on this failure-to-promote-retaliation claim. This holding does not, however, preclude Lige from relying on this theory in support of his sex-discrimination claims.

---

[63] *See Ray v. Henderson*, 217 F.3d 1234, 1241–42 (9th Cir. 2000) (recognizing that the Ninth Circuit holds an expansive view of the type of actions that can be considered adverse employment actions) (citing *Wyatt v. City of Boston*, 35 F.3d 13, 15–16 (1st Cir. 1994) (adverse employment actions include "demotions, disadvantageous transfers or assignments, *refusals to promote*, unwarranted negative job evaluations and toleration of harassment by other employees" (emphasis added)). Even circuits applying the most restrictive views still consider refusals to promote to be adverse employment actions. *Id.* at 1242 ("The Fifth and Eighth Circuits, adopting the most restrictive test, hold that only 'ultimate employment actions' such as hiring, firing, *promoting* and demoting constitute actionable adverse employment actions. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997) . . . ; *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).").

[64] ECF No. 100 at 6–7.

[65] ECF No. 100 at 6–7.

[66] *Id.*

**E.    Civil rights**

Finally, Lige claims that his right to make and enforce an employment contract was violated because Clark County made him perform "extremely difficult physical labor" not required of his non-African-American and female counterparts.  Because Clark County does not address this claim in its motion, it has failed to demonstrate a basis for summary judgment.  So, this claim survives this stage of the proceedings.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Lige's motion for leave to supplement his opposition to Clark County's motion for summary judgment **[ECF No. 111] is GRANTED**.

IT IS FURTHER ORDERED that Clark County's motion for summary judgment **[ECF No. 100] is GRANTED in part and DENIED in part**.  This case proceeds to trial on the following claims:

- racial discrimination resulting in a hostile work environment (claims 1 &2);
- disparate treatment sex discrimination (claims 4 & 5); and
- interference with right to make and enforce contracts (claim 17).

IT IS FURTHER ORDERED that **this case is referred to a magistrate judge for a mandatory settlement conference**.

DATED: February 15, 2018.

_____
U.S. District Judge Jennifer A. Dorsey